1          IN THE UNITED STATES DISTRICT COURT

2             FOR THE DISTRICT OF WYOMING

3    _____

4    UNITED STATES OF AMERICA,          DOCKET NO. 21-CR-077-F

5          Plaintiff,

6          vs.

7    SALVADOR SALAS, JR.,               Cheyenne, Wyoming
                                        July 28, 2021
8          Defendant.                   1:39 p.m.

9

10   _____

11        TRANSCRIPT OF ARRAIGNMENT/DETENTION PROCEEDINGS

12          BEFORE THE HONORABLE KELLY H. RANKIN
            CHIEF UNITED STATES MAGISTRATE JUDGE
13
     APPEARANCES:
14   For the Plaintiff:        CHRISTYNE M. MARTENS
                               Assistant United States Attorney
15                             DISTRICT OF WYOMING
                               100 East B Street, Suite 2211
16                             Casper, WY  82601

17   For the Defendant:        DAVID WEISS
                               Assistant Federal Public Defender
18                             DISTRICT OF WYOMING
                               214 West Lincolnway, Suite 31-A
19                             Cheyenne, WY  82001

20

21

22            *JANET DAVIS, RDR, FCRR, CRR*
              *Federal Official Court Reporter*
23   *2120 Capitol Avenue, Room 2226, Cheyenne, WY  82001*
              *307.314.2356 * jbd.davis@gmail.com*
24

25   *Proceedings reported by stenotype reporter; transcript produced*
     *with Computer-Aided Transcription.*

1        (Proceedings commenced 1:39 p.m., July 28, 2021.)

2            THE COURT:  Thank you.  Good afternoon.

3            We're on the record in the matter of United States of

4    America versus Salvador Salas, Jr., Case No. 21-CR-77-F.  I

5    note the presence of Christyne Martens, Assistant United States

6    Attorney; David Weiss, Assistant Federal Public Defender, and

7    Mr. Salas who appears from the Platte County Detention Center

8    via video for his arraignment and detention hearing.

9            Mr. Salas, before we proceed any further, I do need to

10   ask you some questions to make sure you understand what we're

11   doing here today.  But before I do that, I will ask the

12   courtroom deputy here to administer an oath.

13   (Defendant sworn.)

14           THE COURT:  Mr. Salas, are you able to hear and see us

15   okay this afternoon?

16           THE DEFENDANT:  Yes -- yes, Your Honor.

17           THE COURT:  And are you currently under the influence

18   of any alcohol or controlled substances?

19           THE DEFENDANT:  No, sir, I'm not.

20           THE COURT:  And are you suffering from any mental or

21   physical condition that would make it difficult for you to

22   understand what we're doing here today?

23           THE DEFENDANT:  No, sir.

24           THE COURT:  And are you under the care of a medical

25   provider and currently taking any prescription medication?

1          THE DEFENDANT:  No, sir.

2          THE COURT:  As mentioned, you, Mr. Salas, as all of

3    us, are appearing by video this afternoon, but you have every

4    right to appear in person with me, along with your attorney.

5    Or you can consent and agree to appear by video for today's

6    hearing.

7          I see that you have signed a written consent form

8    indicating to me that you are agreeable to video, but I want to

9    confirm:  Do you, in fact, agree to appear that way, sir?

10         THE DEFENDANT:  Yes, sir.

11         THE COURT:  Any objection on behalf of Mr. Salas,

12   Mr. Weiss?

13         MR. WEISS:  No, Your Honor.

14         THE COURT:  Ms. Martens, any objection from the United

15   States?

16         MS. MARTENS:  None, Your Honor.

17         THE COURT:  Mr. Salas, the purpose of your hearing is

18   twofold, the first of which is your arraignment.  And the

19   purpose of an arraignment is to go over each of the six charges

20   that are alleged against you in this recently filed indictment.

21         We will go over those counts.  We'll also talk about

22   the maximum penalties you face should you be convicted of one

23   or more of these offenses, and then I'll formally ask you to

24   enter pleas to each count.  It's my expectation you will be

25   pleading not guilty to all six counts, in which case we will

Docket 21-CR-077-F                                                    4

1   establish a trial date in your case.  We will also impose some

2   other related obligations.

3           And then, secondly, we will turn our attention to the

4   issue of detention or release while the case is pending.

5           Mr. Salas, do you understand generally what we're

6   doing here this afternoon?

7           THE DEFENDANT:  Yes, sir.  Yes, Your Honor, I do fully

8   understand.

9           THE COURT:  Very well.

10          MR. WEISS:  Your Honor, if I may.

11          THE COURT:  Mr. Weiss.

12          MR. WEISS:  I've had a chance to talk to Mr. Salas,

13  and given both the amount and nature of the charges, the fact

14  that Mr. Salas has a copy of the indictment in front of him, we

15  are fine with a summary of the charges themselves and not a

16  full reading of the allegations in each charge in terms of

17  today's proceedings.

18          Are you -- is that correct, Salvador?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  All right.  Very well.  Then I'll just

21  simply summarize, Mr. Salas, the nature of the charges alleged

22  and then we'll talk about the maximum penalties for each.

23          So you can look, if you will, at the first page of the

24  indictment, you will see in the caption there what the six

25  counts separately allege.

1          So Count One alleges possession of child pornography.

2     That's in violation of 18 United States Code, Section

3     2251A(a) -- subsections (a)(5)(B) and (b)(2), and Counts Two

4     through Six separately charge you with the production of child

5     pornography, and that's in violation of 18 United States Code

6     Section 2251(a), (e).

7          And then following the indictment, Mr. Salas, should

8     be a penalty summary that outlines the maximum penalties you

9     face should you be convicted of one or more of these offenses.

10         Do you see that document, sir?

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  So as you can see, for Count One -- that's

13    the possession of child pornography -- if convicted, you face

14    anywhere from zero up to 20 years in prison, a fine of up to

15    $250,000, not less than five years up to a life term of

16    supervised release following any period of confinement, and

17    then there's a mandatory $100 special assessment.

18         There's also a $5,000 special assessment pursuant to

19    the Victims of Sex Trafficking Act of 2015, and a further

20    special assessment of up to $17,000 along with mandatory

21    restitution of not less than $3,000 per requesting victim,

22    pursuant to the Amy, Vicky and Andy Child Pornography Victim

23    Assistance Act of 2018.

24         And then for Counts Two through Six, each separately

25    carries the following maximum penalties, and, again, each of

Docket 21-CR-077-F                                                6

1   these separately charges you with the offense of production of

2   child pornography.  Each carries with it a term of imprisonment

3   of not less than 15 up to 30 years, fines of up to $250,000,

4   not less than five years up to a life term of supervised

5   release, and then each has a $100 special assessment.

6          Each also carries with it a special assessment of

7   $5,000 pursuant to the Victims of Sex Trafficking Act, and also

8   a special assessment of up to $50,000 and mandatory restitution

9   of not less than $3,000 per requesting victim, pursuant to the

10  Victim Assistance Act of 2018.

11         Understand, sir, that all six of these charges are

12  felony offenses, and should you be convicted of all six counts

13  and they were to be imposed consecutively, that is, one after

14  another, you face the following total maximum penalties:  Sir,

15  you face up to -- not less, rather, than 15 years up to a life

16  term of imprisonment, fines of up to $1,500,000, a life period

17  of supervised release following any period of incarceration,

18  $600 in mandatory special assessments, and also there are

19  special assessments of up to $30,000, pursuant to the Victims

20  of Sex Trafficking Act and up to $267,000 in special

21  assessments and mandatory restitution of not less than $3,000

22  per requesting victim, pursuant to the Victim Assistance Act of

23  2018.

24         Mr. Salas, do you understand generally the nature of

25  the charges alleged against you and also the maximum penalties

1    for each count?

2          THE DEFENDANT:  Yes, Your Honor, I'm very aware of the

3    charges and the penalties.

4          THE COURT:  All right.  Very well.

5          Mr. Weiss, is Mr. Salas prepared to enter pleas at

6    this time?

7          MR. WEISS:  He is, Your Honor.

8          Just very quickly, the penalty summary I had says --

9    has a listing of life for the total, life imprisonment.  The

10   way Your Honor had stated it, the 15 to life, I think is

11   correct.  I just wanted to make sure that that was formally how

12   it is going to be written.

13         THE COURT:  All right.  And just -- Ms. Martens, do

14   you agree that the maximum penalty in terms of the imprisonment

15   potential is not less than 15 up to a life term of

16   imprisonment?

17         MS. MARTENS:  I do, Your Honor.  I see that the

18   mandatory minimum got left off there.

19         THE COURT:  All right.  Very well.

20         So just so you understand, Mr. Salas, the maximum

21   penalties, if convicted, again, of all six counts and should

22   they run consecutively, is not less than 15 up to a life term

23   of imprisonment as mentioned.

24         Do you understand that, sir?

25         MR. WEISS:  Your Honor, if I may.  I have seen it

1  written both ways.  If they were to run consecutive, because

2  they're five 15-year mandatory minimums, that would be 75

3  years.  I don't believe the law requires that they run

4  consecutive, but often it is written as 75 to life.  But I

5  agree that the actual minimum mandatory is 15.

6        THE COURT:  All right.  Very well.

7        Mr. Salas, with respect to Count One, again, that

8  alleges the offense of possession of child pornography, how do

9  you plead, sir?

10       THE DEFENDANT:  No -- not guilty, sir.

11       THE COURT:  As to Count Two that alleges production of

12 child pornography, how do you plead?

13       THE DEFENDANT:  Not guilty, sir.

14       THE COURT:  As to Count Three that alleges production

15 of child pornography, how do you plead, sir?

16       THE DEFENDANT:  Not guilty, sir.

17       THE COURT:  As to Count Four that also alleges

18 production of child pornography, how do you plead?

19       THE DEFENDANT:  Not guilty, sir.

20       THE COURT:  As to Count Five that alleges production

21 of child pornography, how do you plead?

22       THE DEFENDANT:  Not guilty, sir.  I'm not that man.

23       THE COURT:  Also as to Count Six that also alleges

24 production of child pornography, how do you plead, sir?

25       THE DEFENDANT:  Not guilty, sir.

1      THE COURT:  Your not guilty pleas are entered as a

2  matter of record.

3      It appears in Mr. Salas' case that Speedy Trial

4  expires on or about October 1st of this year.

5      Any objection to that preliminary calculation,

6  Mr. Weiss?

7      MR. WEISS:  No, Your Honor.

8      THE COURT:  And Ms. Martens?

9      MS. MARTENS:  No, Your Honor.

10      THE COURT:  Accordingly, then, we will schedule

11  Mr. Salas' jury trial for September 27th of 2021, beginning at

12  8:30 a.m., and that's before Judge Freudenthal here in the

13  federal courthouse building in Cheyenne.  Again, that's

14  September 27th at 8:30 a.m.

15      Ms. Martens, the position of the United States

16  regarding discovery and grand jury transcripts?

17      MS. MARTENS:  At this time, Your Honor, we are already

18  working on redacting our discovery to protect the identity of

19  the minor victim.  But we would ask for just a little extra

20  time on top of our standard order which only gives us about two

21  weeks.  So if I could ask for maybe an extra week just to make

22  sure we have a chance to comb through it thoroughly.  I hope to

23  get it out before that deadline, but I would like that cushion

24  here.

25      THE COURT:  Any need for a protective order or your

1   position regarding grand jury transcripts?

2          MS. MARTENS:  Yes, Your Honor, I would ask for the

3   standard protective order that limits the discovery to the

4   defense team in this case.

5          And then I would also ask -- I have no objection to

6   the sharing of the grand jury transcripts.

7          THE COURT:  Very well.

8          Mr. Weiss, anything else you would like to add?

9          MR. WEISS:  Your Honor, couple things.  One thing in

10  regard to the limited discovery to the defense team, is there

11  an objection to us providing the discovery that we have, if

12  Mr. Salas remains in custody, to -- on a hard drive or flash

13  drive to the facility where he is so that he may review it on

14  that facility's computer?

15         MS. MARTENS:  I have no objection to that, Your Honor.

16         MR. WEISS:  Obviously, if he's released, we will work

17  out some other accommodation.

18         We might be asking for a continuance in this case.  My

19  only objection -- not to be difficult -- would be that if we

20  were to have a three-week date as to the receipt of discovery,

21  that would give the defense about a week to review all of the

22  discovery and have motions in.

23         So I would ask only that if Your Honor were to grant

24  the government's request for an additional week -- because I

25  don't know whether -- I have not talked to Mr. Salas about a

1   continuance and I don't know whether that would be granted --

2   that our -- that the order reflect that we have at least three

3   weeks from the date of the receipt of the discovery to file any

4   motions.

5           THE COURT:  All right.  Mr. Weiss, thank you.

6           Ms. Martens, any response you would like to add?

7           MS. MARTENS:  No, Your Honor.

8           THE COURT:  I will modify the Rule 16 discovery order

9   and accommodate the government's discovery request and give

10  them up to three weeks from today to provide the discovery to

11  Mr. Weiss.

12          And, reciprocally, I will provide -- Mr. Salas and his

13  defense team may have at least three weeks -- or up to three

14  weeks within which to receive that discovery as provided to

15  file any necessary defense motions.

16          Did I cover that accurately, Mr. Weiss?

17          MR. WEISS:  Yes, Your Honor.  Thank you.

18          THE COURT:  You're welcome.

19          Also, I will remind the United States that they're

20  ordered to produce all exculpatory evidence in the case

21  pursuant to *Brady versus Maryland*, and failing to do so could

22  result in sanctions to include exclusion of evidence, contempt

23  proceedings, adverse jury instructions, and potentially

24  dismissal of one or more charges.

25          Regarding the arraignment portion of today's hearing,

1   Mr. Weiss, anything else in that regard for you or Mr. Salas?

2           MR. WEISS:  Nothing.  Thank you, Your Honor.

3           THE COURT:  And, Ms. Martens, anything else?

4           MS. MARTENS:  Nothing, Your Honor.

5           THE COURT:  Very well.  Then let's shift our attention

6   to the issue of detention or release while the case is pending.

7   I will note that there is a written Pretrial Services Report

8   that has been filed.

9           Have counsel had an opportunity to review that report?

10  Mr. Weiss?

11          MR. WEISS:  We have, Your Honor.

12          THE COURT:  And Ms. Martens?

13          MS. MARTENS:  I have, Your Honor.

14          THE COURT:  All right.  I will hear from the United

15  States first, please.

16          MS. MARTENS:  Thank you, Your Honor.

17          It's my intention to rely on the Pretrial Services

18  Report and to proffer a few additional details to the Court.

19          So as you're familiar, Your Honor, this case carries

20  with it a presumption of pretrial detention, given the nature

21  of the charges.  Most certainly we're relying on that

22  presumption, and I don't think we need to delve too deeply into

23  the evidence.

24          So in addition to that presumption, what we see in the

25  Pretrial Services bond report tells us that Mr. Salas has a

Docket 21-CR-077-F                                                  13

1    history of both failure to appear and violation of protection

2    orders.  So I think that those two things show a history of not

3    only a risk of flight, but dangerousness to folks in the

4    community.  I think those things should weigh heavily in this

5    Court's determination about whether or not he's an appropriate

6    candidate for pretrial release.

7            And I guess I should say also that I did chat with

8    Mr. Weiss, and I launched into my full sort of explanation to

9    the Court with the idea that Mr. Salas is not consenting to

10   detention.  But all of that I think weighs in favor of

11   detaining Mr. Salas.

12           The Pretrial Services Report also talks about his

13   pending battery charges against Ms. Parminter, and those

14   things, I think, all weigh additionally towards his

15   dangerousness.

16           Then another thing that I'd like to talk to the Court

17   about is we do have precedent in the Tenth Circus -- good

18   Lord -- Tenth Circuit, and the case is United States versus

19   Cisneros -- so that got word jumbled.  I apologize -- talking

20   about how realizing the strength of the Government's case and

21   the severities of the penalties involved can certainly be good

22   inspiration for people to flee.  And I think that's a pretty

23   natural conclusion.

24           So in a case like this what we're talking about -- I

25   think that the Pretrial Services Report gives a fair and brief

1    summary of the case that's ahead of Mr. Salas, but I would like

2    to add a couple of details here for the Court.

3          So what we have here is possession of child

4    pornography and then production of child pornography charged in

5    five separate counts with the same minor victim.  And I will

6    tell the Court that the videos that are charged individually in

7    four counts and the pictures that are charged in that fifth

8    count are geotag located to Mr. Salas' residence.  Mr. Salas'

9    body parts are visible in the videos, and I believe his face is

10   visible in a photo or two in the stack.  But, in addition, we

11   do have Mr. Salas admitting to sexual contact with the minor.

12         And given that kind of evidence against the defendant,

13   I think that -- and the maximum penalties that we've talked

14   about here today, I think that that all gives him solid

15   incentive to flee.

16         And I think that those factors taken together

17   certainly in the analysis under 3142 say not only is he a risk

18   of flight and that there are no terms or conditions that could

19   assure his appearance as required for court, but I think he's

20   also a danger to the community in the purely predatory nature

21   of this crime and his history of failure to abide by those

22   protective orders previously issued by the courts.

23         THE COURT:  Thank you, Ms. Martens.

24         Mr. Weiss.

25         MR. WEISS:  Your Honor, both the Pretrial Services

1    Report and Ms. Martens talk about Mr. Salas' history in terms

2    of both his risk of flight and Ms. Martens' more on his risk of

3    dangerousness, the risk of flight being failures to appear in

4    2007 and 2011, and I believe the prior violations of protection

5    orders being 2011 and 2012.  So the most recent incident we're

6    talking about is nine years old.

7            And I understand that these are very serious charges

8    and that, you know, the mandatory minimums are significant and

9    do weigh on the risk of flight.  However, when we're looking at

10   Mr. Salas' history, I think we need to look at his recent

11   history.  And the fact is he was charged on similar charges

12   involving similar -- not, obviously, the images, but the

13   behaviors were charged -- excuse me -- in state court from the

14   same exact instances.

15           At that time, he was given bond.  I know the events

16   were in late February.  I am not exactly sure of when he was

17   given bond, but I believe it would have been late February,

18   early March.

19           Since that time, Mr. Salas has been completely

20   compliant on his bond conditions.  He's checked in with his

21   probation officer.  He's maintained employment.

22           Salvador, you would like to say something?

23           THE DEFENDANT:  Yeah.

24           MR. WEISS:  What would you like to say?

25           THE DEFENDANT:  I've contacted my --

1            MR. WEISS:  What was that?

2            THE DEFENDANT:  I contacted my probation, my bond --

3            MR. WEISS:  You've also been in contact with your bail

4    bondsman?

5            THE DEFENDANT:  Yes, twice a week, sir, and I've had

6    gainful employment.  And I'm building bridges and I'm building

7    these walls and stuff out there in Jackson, between Jackson

8    Hole and Alpine.  And I've been really clear -- I've been

9    really crystal-clear with my employer and where I work with,

10   and they've contacted my -- I got a letter, too, of my

11   employer.  I do heavy equipment operating and I -- out of 30

12   employees and stuff and where I'm pretty much -- I operate a

13   crane, too, so pretty much I -- they depend on me and I depend

14   on them, too, as well.  But I've been -- I've had gainful

15   employment, too, as well.  And I've been contacting -- like

16   I -- as I said, I've been contacting my bondsman twice a week

17   and keeping him in the loop.  And I own a graphic design and

18   advertising business and a clothing line, too.

19           MR. WEISS:  So, Your Honor, I think recent history,

20   you know, over the past several months is a better indicator of

21   where Mr. Salas is at than going back 9, all the way back to 14

22   years, from 9 -- from 14 years ago to 9 years ago to look at

23   his behavior.  He has been completely compliant.  He's been

24   employed.  He's been in contact with those he needs to be in

25   contact with.  And there's no reason to think that if he were

1   to continue on release that he would be anything but compliant.

2   He's had very serious charges pending against him since he's

3   been out on bond, and he has strong connections here and has

4   made no attempt to flee whatsoever.

5          Additionally, I am not sure -- and I don't know if

6   Ms. Martens knows or not -- whether or not those state charges

7   are still pending.

8          MS. MARTENS:  I believe they are still pending.

9          MR. WEISS:  So he would not only be subject to ankle

10  monitoring in federal court, but he would also, if released,

11  still be on the state bond and have the -- and Salvador, how

12  much money was put up on your state bond?

13         THE DEFENDANT:  It was about -- I believe it was a

14  hundred percent -- $100,000 cash or surety, and it was a

15  bond -- and I've been trying to --

16         MR. WEISS:  But the bond itself was a surety of

17  $100,000?

18         THE DEFENDANT:  Yes, sir, of a hundred thousand.  And

19  so me and my parents, we have been --

20         MR. WEISS:  Okay.

21         So in addition to any conditions Your Honor were to

22  put on him, which I think, given the charges, an ankle monitor

23  would be mandated under the Adam Walsh Act, he would also

24  continue to be on that state bond where there's an additional

25  $100,000 surety and, just to remind the Court, a bond that he's

1    been totally compliant on.

2           For those reasons, I would ask the Court to grant a

3    sign-on bond for Mr. Salas, require him to wear an ankle

4    monitor and whatever other conditions the Court thought were

5    necessary.

6           THE COURT:  Thank you, Mr. Weiss.

7           Ms. Martens, anything else you would like to add?

8           MS. MARTENS:  Um, I think that the Pretrial Services

9    Report fairly well captures the essence of what's happening

10   here.  And when we talk about Mr. Salas' compliance, I would

11   point out for the Court that our Pretrial Services Report does

12   note that he denied any real substance abuse problem or

13   history, but that's clearly reflected in his history here with

14   his controlled substances violations which do come forward in

15   time past those protective order violations and failures to

16   appear.

17          So I do have some overall concerns about his candor,

18   both with our Pretrial Services officer and the Court in

19   general.

20          THE COURT:  Thank you, Ms. Martens.

21          Well, Mr. Salas, as has been indicated by your

22   attorney, the attorney for the Government and certainly as you

23   recognize, there's no question that you face six very serious

24   charges that carry with it very serious consequences.

25          As a result of that, there is a presumption that you

1    should be detained, albeit it is rebuttable.  And in

2    considering whether that has been rebutted, and even if it has,

3    a number of factors for me to assess to determine whether or

4    not you are a flight risk or a danger to the community, I

5    consider the nature and circumstances of the offense or in this

6    case, the offenses.  And as mentioned, there's no disputing

7    that these are very serious charges as alleged involving a

8    minor victim.  So that works in favor of detention just

9    generally.

10           The second prong for my consideration is the weight of

11    the evidence.  And we've heard some proffered information from

12    the prosecutor, Ms. Martens.  There's some references also in

13    the Pretrial Services Report to the serious nature underlying

14    each of these charges.  And it appears generally that the

15    evidence against you is quite strong.  You'll certainly have

16    every opportunity to challenge the Government's evidence in due

17    course.  But for purposes of today's hearing, that factor also

18    weighs in favor of your continued detention.

19           The third characteristic -- rather, factor, is your

20    history and characteristics, and in that regard it is sort of a

21    mixed bag.  As articulated by Mr. Weiss and Ms. Martens, there

22    are some positive components of your history, including your

23    employment history.  I think what stands out, the most apparent

24    to me, and that is what you've been able to procure a job and

25    that you have a well-paying job in the Jackson area currently.

Docket 21-CR-077-F                                              20

1          You also have, apparently, for an unknown period of

2    time not committed any violations of your state bond on either

3    pending matter.  And there are, I would note, two matters

4    pending.  One is a domestic battery times two, two charges

5    pending there in Natrona County, and also the matters that

6    appear to be somewhat related to the charges for which you

7    appear in this court.

8          So, to my knowledge -- and there's been no evidence or

9    information presented to the contrary -- you have presented

10   yourself, for at least a period of time, again, an unknown

11   period of time, and not violated your term of supervision of

12   release.  So those are certainly areas that are favorable.

13         On the flipside of the coin, I do have strong

14   concerns, as indicated by Ms. Martens, about your substance

15   abuse history coupled with the nature of the allegations, and

16   there does appear to be some inconsistent statements that have

17   been made to the Pretrial Services officer here regarding that

18   history.

19         But even without that, there's no question that during

20   the course of your conduct that -- for which you have

21   encountered law enforcement and been convicted of various

22   offenses, there are substance abuse violations on your record.

23   And we can go back as far as necessary, but certainly beginning

24   in 2013, where apparently there was an allegation and a

25   conviction of possession with intent to distribute cocaine,

1    then another unlawful possession of a controlled substance in

2    Campbell County in 2016, and then another unlawful possession

3    of a controlled substance and delivery.  Those matters were

4    dismissed earlier this year.

5            And I can't help but notice the date of offense for

6    that is the same date of offense for the offenses for which you

7    have been charged here, so I make the assumption that those are

8    related to the allegations involving controlled substances in

9    these various counts.

10           There is also a concern about an assaultive-type

11   conduct that is pending.  Again, you have been released on

12   that, also out of Casper; domestic violence with two offenses

13   alleged there, and then presumably related charges pending in

14   Natrona County, although the date of offense in the report

15   indicates April 1st, whereas the offenses alleged here occurred

16   prior to that, as late as the first part of March.

17           So I assume they're related, and I do understand that

18   those matters are still pending, in any event, as indicated in

19   the report.

20           So when I look at all of that -- and can't certainly

21   ignore the serious nature of these charges, the substance abuse

22   history and some of the inconsistencies there.  Certainly there

23   have been some compliance issues along the way, but admittedly,

24   those have been nine, ten years or more ago -- I find on

25   balance that based on the information before me at this point,

1  without a firm release plan and without any real assurance that

2  you would not be a flight risk or a danger to the community,

3  based on the information and the evidence presented to me -- I

4  find that by clear and convincing evidence, as recommended by

5  the Pretrial Services officer and the United States, that as of

6  today, there are no conditions or combination of conditions

7  that can be imposed to ensure that you're not a flight risk nor

8  a danger to others in the community based on your history.

9           So for those reasons, Mr. Salas, I will order you

10  detained pending further proceedings in this matter.

11          Mr. Weiss, anything else I can address in Mr. Salas'

12  case this afternoon?

13          MR. WEISS:  Not at this time.  Thank you, Your Honor.

14          THE COURT:  You're welcome.

15          Ms. Martens, anything else for the United States?

16          MS. MARTENS:  No, Your Honor.  Thank you.

17          THE COURT:  All right.  Very well.  That concludes

18  today's hearing for Mr. Salas.  And we'll say good-bye now.

19  Thank you, everyone.

20          MR. WEISS:  Your Honor, one sec.

21          THE COURT:  I'm sorry?  Yes.

22          MR. WEISS:  Salvador, will you call me Monday, okay?

23          THE DEFENDANT:  Yes, sir.

24          MR. WEISS:  All right.

25          THE COURT:  All right.  Thank you, everyone.  We will

Docket 21-CR-077-F                                                                23

1   say good-bye.

2        (Proceedings concluded 2:10 p.m., July 28, 2021.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3

4

5          I, JANET DAVIS, Federal Official Court Reporter for

6    the United States District Court for the District of Wyoming, a

7    Registered Diplomate Reporter, Federal Certified Realtime

8    Reporter, and Certified Realtime Reporter, do hereby certify

9    that I reported by machine shorthand the foregoing proceedings

10   contained herein on the aforementioned subject on the date

11   herein set forth, and that the foregoing pages constitute a

12   full, true and correct transcript.

13

14          Dated this 13th day of August, 2021.

15

16

17

18                              /s/ *Janet Davis*

19                              _____

20                              *JANET DAVIS, RDR, FCRR, CRR*
                                *Federal Official Court Reporter*

21

22

23

24

25